**In re Stephen L. SMITH, Debtor.**

**Terry E. SMITH, Trustee, Plaintiff,**

**v.**

**Perry SHOEMAKER, Winston H. Collins & Co., Winston H. Collins, Grace Fippinger, Mae A. Smythe, Charles Sheron, Emma Eileen McClure, Mitchell Kalogridis, Richard D. Pope, Jr., Ronald M. Owen, Defendants.**

**Bankruptcy No. 89–1190–8P7.
Adv. Nos. 90–032, 89–646, 89–656, 89–721, 90–031, 90–033, 89–585, 89–695, 89–705 and 89–708.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 22, 1990.

Frank A. Principe, Tampa, Fla., for plaintiff.

Edward M. Waller, Jr., Tampa, Fla., for Perry M. Shoemaker, trustee.

Judy E. Weisman, Atlanta, Ga., Robert L. Barnes, Jr., Clearwater, Fla., for Winston H. Collins & Co., Winston H. Collins.

Don M. Stichter, Tampa, Fla., for Grace Fippinger.

Stephen F. Baker, Winter Haven, Fla., for Mae A. Smythe.

Shirley C. Arcuri, Tampa, Fla., for Richard D. Pope, Jr.

Stephen F. Baker, Winter Haven, Fla., for Mitchell Kalogridis.

David R. McFarlin, Orlando, Fla., for Ronald M. Owen.

Robert L. Barnes, Jr., Clearwater, Fla., for Charles Sheron.

Edward M. Waller, Jr., Tampa, Fla., and Rebecca R. Bell, for Emma Eileen McClure.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case in which Terry E. Smith, the Trustee (Trustee) for the estate of Stephen L. Smith (Debtor), no relation, filed 137 adversary proceedings against various defendants who were all investors in an investment scheme conducted by the Debtor which ultimately turned out to be a "Ponzi" scheme. The matters presently under consideration are Motions for Summary Judgment (Motions) filed by the Defendants in the above-captioned adversary proceedings. It is the contention of the Defendants that there are no genuine issues of material fact and that they are entitled to a judgment in their favor as a matter of law. The Trustee has also filed a Partial Motion for Summary Judgment, but only as to Count I of the Amended Complaint. The procedural history of these adversary proceedings is as follows:

The original Complaints filed by the Trustee of this Chapter 7 case were identical in all of these adversary proceedings and consisted of seven counts. Counts I, II, III and IV were based on the Uniform Fraudulent Transfer Act (UFTA), *Fla. Stat.* §§ 726.105 and 726.106 (1988), a statute which became effective January 1, 1988, and Sections 544(b) and 550 of the Bankruptcy Code. The claims set forth in Counts V, VI and VII were based on a previous version of the fraudulent transfer statute of this State, *Fla. Stat.* § 726.01,

which was repealed in 1988, and Sections 544(b) and 550 of the Bankruptcy Code. The Defendants promptly filed Motions to Dismiss the Complaint and attacked the counts of the Complaint which were based on *Fla. Stat.* §§ 726.105 and 726.106 on the basis that these statutes were enacted in 1988 and have no retroactive application to the transactions complained of.

On March 7, 1990, this Court entered an Order and granted the Motions to Dismiss of the Defendants and dismissed the entire Complaint without prejudice with leave granted to the Trustee to file an amended complaint. On March 5, 1990, the Trustee filed an Amended Complaint which limited the claim to recovery to those counts which were based on *Fla. Stat.* § 726.01 and Sections 544(b) and 550 of the Bankruptcy Code.

The Amended Complaint consists of only two counts. Count I of the Amended Complaint is based on the theory that the Defendants who received more than their original investment in the Ponzi scheme received a transfer which was fraudulent in that it was "made for less than fair consideration" and, therefore, by virtue of *Fla. Stat.* § 726.01, and Sections 544(b) and 550 of the Bankruptcy Code, the Trustee is entitled to recover the so-called "profits" obtained by these investors. Count II of the Amended Complaint alleges that the Defendants had knowledge of the "Ponzi" Scheme and thus did not receive their profits in good faith, therefore, payments they received in excess of their investment are voidable based on *Fla. Stat.* § 726.01 and Sections 544(b) and 550 of the Bankruptcy Code.

The facts relevant to a resolution of this matter which are undisputed and as appear from the record are as follows:

During the relevant time period, commencing in the 1970's, the Debtor operated an investment scheme under the trade name SH Oil and Gas Exploration whereby he sold interests in oil and gas explorations described either as "production pool" investments or as "partial assignments" of leases for specific, identifiable oil wells.

These "investments" solicited from the public eventually turned out to be nothing more than a "Ponzi Scheme" because the Debtor never owned any of the oil or gas producing properties in which he sold or purported to assign interests to investors. The "Ponzi Scheme" continued until December of 1987, when the Comptroller of the State of Florida finally moved in, shut down the business of the Debtor and obtained the appointment of a receiver who seized all the Debtor's assets.

During the operation of his business, the Debtor paid to investors a monthly return on their investments, obviously not from funds generated through the nonexistent oil and gas explorations, but from the funds collected from new investors or from funds obtained through loans obtained from other entities. It is without dispute that several of the investors, namely these Defendants, received not only their original investment but also "profits" on their investments. For instance, the Defendant named in Adversary Proceeding No. 90–32, Perry M. Shoemaker, as Trustee, invested $110,607.00 and did receive, according to the Trustee, not only the return of his investment, but an additional $110,607 in profit.

Based on this scenario, the Trustee contends that the so-called "winners", including this Defendant, received payments in excess of their original investments which were not supported by any consideration, and thus their "winnings" are transfers which are voidable by the Trustee as fraudulent pursuant to Sections 544(b) and 550 of the Bankruptcy Code and *Fla. Stat.* § 726.01. The Trustee claims to be entitled to reach out and utilize *Fla. Stat.* § 726.01, a fraudulent conveyance statute of this State, on the basis of Section 544(b) of the Bankruptcy Code which provides:

> (b) The Trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title
> . . .

It is well established that before a trustee is able to utilize applicable state or federal law referred to in Section 544(b), there must be an allegation and ultimately a proof of the existence of at least one unsecured creditor of the Debtor who at the time the transfer in question occurred could have, under applicable local law, attacked and set aside the transfer under consideration. *In re Steele*, 79 B.R. 503 (Bankr.M.D.Fla.1987); *In re Schaps*, 58 B.R. 581 (Bankr.E.D.Pa.1986); *In re Kaylor Equipment & Rental, Inc.*, 56 B.R. 58 (Bankr.E.D.Tenn.1985).

The Defendants argue in support of their Motions that there were no unsecured creditors in existence at the time these transfers occurred and therefore the Trustee cannot, as a matter of law, utilize the Fraudulent Transfer Statute of this State. A review of the Amended Complaint reveals that the Trustee did in fact allege, in paragraph 13, that "at all times material hereto, there were in existence unsecured creditors of the Debtor as to whom the payments ... were voidable pursuant to [the] Florida Statute." While the answers filed by the Defendants deny this allegation on the basis that they are without knowledge, this record fails to reveal an affidavit by the Defendants to substantiate their denial. In fact, the only affidavit on record is by the Trustee which equally fails to shed any light on this issue.

Thus, while it appears that technically there is a genuine issue which would prevent the summary disposition of the claims asserted by the Trustee against the Defendants, this Court is of the opinion that this is merely a paper issue and, therefore, it would not present an obstacle to the disposition of the issues involved as a matter of law. For this reason, it is appropriate to consider the additional contention raised by the Defendants which is whether or not the Trustee can prevail under Count I as a matter of law based on *Fla. Stat.* § 726.01, even assuming for the purpose of discussion that the Trustee will be able to ultimately establish the existence of an unsecured creditor in existence at the times relevant.

■ The original version of the fraudulent transfer statute in this State, *Fla. Stat.* § 726.01, provides *inter alia* that a conveyance of lands, goods and chattels shall be void when made with the intent to delay, hinder or defraud creditors, *except* where the transferee gives "good consideration" and, at the time of the transfer, did not have knowledge or notice of the fraud. Under the provisions of this Statute, the initial inquiry must be directed to the question first whether or not the Debtor made the transfer with the intent to hinder, delay or defraud creditors. *George E. Sebring Co. v. O'Rourke*, 101 Fla. 885, 134 So. 556, 562 (1931). If so, then the next avenue of inquiry must be directed to the question of whether certain facts exist which would save the transfer and remove the transaction from the reach of the voiding provision of the Statute. This is so because if the transfer was made for consideration, it will not be avoidable as fraudulent provided the transferee acted in good faith. *Id.*

It is undisputed that the Debtor intended to defraud creditors in operating the Ponzi Scheme. Notwithstanding, it is the contention of the Defendants that a fair reading of this Statute leaves no doubt that the Trustee cannot recover as a matter of law, simply because the Defendants gave good consideration for the transfer under attack. In opposition, the Trustee contends that because the Defendants received more than they invested, the "profits" they received are not supported by any consideration, therefore, the payments of profits are avoidable under the Statute. The difficulty with the proposition urged by the Trustee should be evident when one carefully analyzes the Statute relied on. The Statute only requires *good* consideration and not reasonably equivalent value, which, of course, is the standard established by the new version of *Fla. Stat.* § 726.01 and the UFTA and Section 548 of the Bankruptcy Code. Thus, the ultimate question is whether or not the Defendants gave "good consideration" supporting not only their original investment but also any "profits" received from their investment.

The Trustee concedes as he must that an investor who receives a return on his investment in addition to the return of the original investment in a legitimate business is certainly immune from attack under this Statute. However, it is the contention of the Trustee that this is not true if an investor receives profits from an investment derived from a fraudulent scheme, especially a "Ponzi" scheme, and that the original investment would not be sufficient to serve as fair consideration to support the excess, i.e. the so-called profits, received by the investor over and above the original investment.

In support of this proposition the Trustee relies on *Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924), *In re Independent Clearing House Company*, 77 B.R. 843 (Bankr.Utah 1987), *In re Moore*, 39 B.R. 571 (Bankr.M.D.Fla.1984), *In re Baker and Getty Financial Services, Inc.*, 88 B.R. 792 (Bankr.N.D.Ohio 1988), and *Conroy v. Shott*, 363 F.2d 90 (6th Cir.1966), *cert. denied*, 385 U.S. 969, 87 S.Ct. 501, 17 L.Ed.2d 433 (1966). There is no question that these cases held that profits obtained from a Ponzi scheme are not supported by sufficient consideration by the initial investment and therefore are avoidable. All of these cases were decided under either the Bankruptcy Code's fraudulent conveyance section, Section 548, the Uniform Fraudulent Conveyance Act, which has not been adopted in Florida, or other state fraudulent conveyance statutes. None of these cases were based on *Fla. Stat.* § 726.01, which, as noted previously, requires only "good consideration." In fact, as noted earlier, the Trustee alleges in his Amended Complaint that the transfers under attack were made "for less than *fair consideration*," which is not the appropriate standard under *Fla. Stat.* § 726.01. For this reason, this Court finds the Trustee's argument unpersuasive and without merit.

■ Under the provisions of *Fla. Stat.* § 726.01, "good consideration" is all that is required by the savings clause of *Fla. Stat.* § 726.01 which exempts certain transferees from attack under this Statute. According to Black's Law Dictionary, good consideration is "any benefit conferred, or agreed to

be conferred, upon the promisor, by any other person, to which the person is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person ..." Good consideration is that which would support a simple contract. *Parts Depot, Inc. v. Bullock*, 545 So.2d 468, 471 (Fla. 2d DCA 1989) [Purchase price below market value is valuable consideration]; *Green v. Casper*, 346 So.2d 1204, 1205 (Fla. 3d DCA 1977) [Conveyance of property for consideration of marriage is not fraudulent as to creditors on the ground of lack of consideration]; *Ostend Realty Co. v. Biscayne Realty & Ins. Co.*, 128 So. 643, 645 (Fla.1930) [Payment of money is consideration]; *George E. Sebring Co. v. O'Rourke*, *supra*, 134 So. at 562, ["[A] consideration" is sufficient to support a transfer which otherwise would be fraudulent to creditors if the transferee acted in good faith.]

Each of these Defendants gave the Debtor substantial sums of money in exchange for their so-called "investment." This Court is satisfied that the transfers were supported by good consideration and thus are exempt from attack under *Fla. Stat.* § 726.01 provided the Defendants acted in good faith. For this reason, as there are no genuine issues of material fact as to Count I, this Court is satisfied that the Defendants are entitled to summary judgment in their favor on Count I of the Amended Complaint.

Regarding Count II, this Court is satisfied that questions of material fact exist, at least as to whether the Defendants acted in good faith. Therefore, the Defendant's Motion should be denied in this regard.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Defendants' Motions for Summary Judgment as to Count I of the Amended Complaint be, and the same are hereby, granted, and Count I of the Amended Complaint is hereby dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DECREED that the Trustee's Partial Motion for Summary Judgment as to Count I be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Defendants' Motions for Summary Judgment as to Count II be, and the same are hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that a continued pre-trial conference on Count II be, and the same is hereby, scheduled to be held before the undersigned in Courtroom A of the United States Bankruptcy Court, 4921 Memorial Highway, Tampa, Florida, on November 20, 1990, at 3:30 p.m.

DONE AND ORDERED: